UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

The Trustees of the Twin City
Bricklayers Fringe Benefit Funds,

       Plaintiff,

v.                                              MEMORANDUM OPINION
                                               AND ORDER
                                               Civil No. 04-3009

Superior Waterproofing, Inc., a
Minnesota corporation; and Raymond
Paschke,

       Defendants.

_____

Superior Waterproofing, Inc., a
Minnesota corporation; and Raymond
Paschke,

       Third-Party Plaintiffs,

v.

Bricklayers and Allied Craftworkers
Local Union No. 1 of Minnesota,

       Third-Party Defendant.

_____

      Gregg J. Cavanagh, for and on behalf of Defendants/Third-Party Plaintiffs.

      Richard A. Miller, Brendan D. Cummins and Justin D. Cummins, Miller-O'Brien, for and on behalf of Third-Party Defendant.

_____

      This matter is before the Court upon Third-Party Defendant's Motion to

1

Dismiss pursuant to Fed.R.Civ.P. 12(b)(6).

Factual Background

    Defendant/Third-Party Plaintiff Superior Waterproofing, Inc. ("Superior") is a Minnesota corporation that employs caulkers and waterproofers with respect to residential, commercial and industrial work. Defendant/Third-Party Plaintiff Raymond Paschke is the sole shareholder and president of Superior. Third-Party Defendant Bricklayers and Allied Craftworkers Local Union No. 1 of Minnesota ("Union") represents caulkers and waterproofers. The Union and Superior have been parties to a series of collective bargaining agreements ("CBAs") since 1980.

    In the Third-Party Complaint, Superior alleges that prior to entering into the first CBA in 1980, an agent of the Union misrepresented to Superior the legal effect of entering into such an agreement. Specifically, Superior alleges that the agent, George Heppelmann, told Superior it could become a signatory to the CBA without placing all of its craft employees in the Union and without making fringe benefit contributions into the Union fringe benefits fund on behalf of all craft employees, as long as Superior placed two or three of its employees into the Union. Based on these representations, Superior agreed to enter into the CBA.

    Superior alleges that for years, it did not place all of its employees with the Union, with the Union's knowledge. Superior renewed the CBAs based on its understanding, and based on actual practice, that only a few of Superior's

employees had to be members of the Union.

In April 2004, however, the Plaintiff Trustees of the Twin City Bricklayers Fringe Benefit Fund (the "Fund"), informed Superior that it had breached the CBA by not contributing to the Fringe Benefit Fund on behalf of all of Superior's employees.  Superior informed the Fund of the Union's representation that all employees need not be covered by the CBA, but the Fund continued to demand that Superior pay for delinquent contributions and eventually brought suit against Superior.

Thereafter, Superior demanded that the Union intercede on Superior's behalf in the suit brought by the Fund, and to indemnify Superior for the delinquent contributions, and the Union refused.  Superior then sought and was granted leave to file this Third-Party Complaint against the Union, asserting claims of fraudulent and negligent misrepresentation, fraudulent concealment, rescission, indemnity and contribution.

The Union moves to dismiss the claims asserted in the Third-Party Complaint as such claims are preempted, or in the alternative, because Superior has failed to exhaust administrative remedies.

Standard

For the purposes of the Union's Motion to Dismiss, the Court takes all facts alleged in the Third-Party Complaint as true.  Westcott v. Omaha, 901 F.2d 1486,

1488 (8th Cir. 1990).  Further, the Court must construe the allegations in the Third-Party Complaint and reasonable inferences arising therefrom favorably to Superior.  Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).  A motion to dismiss will be granted only if "it appears beyond doubt that the Plaintiff can prove no set of facts which would entitle him to relief."  Id.; see Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The Court applies those standards in the following discussion.

Argument

1.  Preemption - Section 301 LMRA

The Union argues that the state law claims asserted against it in the Third-Party Complaint are preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  Section 301 provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

In Textile Workers v. Lincoln Mills, 353 U.S. 448, 451(1957), the United States Supreme Court held that § 301 also authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements."  Section 301 preemption therefore applies:

> if the resolution of a state-law claim depends upon the meaning of a collective bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is preempted and federal labor-law principles – necessarily uniform throughout the Nation – must be employed to resolve the dispute.

Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 405-406 (1988). See also, Steelworkers v. Rawson, 495 U.S. 362, 368 (1990)(only federal law fashioned by the federal courts under § 301 governs interpretation and application of collective bargaining agreements.)

In this case, Superior has alleged that the Union fraudulently induced it to execute the CBA in 1980 when Union representative Heppelmann allegedly told Paschke that Superior would not have to put all of its employees in the Union, and would not have to make fringe benefit contributions for all of its employees to the Union's fringe benefit fund if Superior executed the CBA, knowing such representations were false.

In Minnesota, to establish liability for the claim of fraudulent misrepresentation, Superior must show: 1) that the Union made a false representation of a past or present fact which was material and susceptible of knowledge; 2) that the Union either knew the representation was false or made it without knowing whether it was true or false; 3) that the Union intended to induce Superior to act in reliance on the misrepresentation; 4) that Superior was justified in so acting; and 5) that Superior suffered resulting damage. Midland

National Bank of Minneapolis v. Perranoski, 299 N.W.2d 404, 411-412 (Minn. 1990). When the alleged representation contradicts the terms of a written document, reliance upon the representation may be justified if the written document "is couched in ambiguous legal language which a layman could reasonably believe supported the representation." Id. (citing Weise v. Red Owl Stores, Inc., 286 Minn. 199, 203-204, 175 N.W.2d 184, 187 (1970)). See also, Smith v. Brutger Companies, 569 N.W.2d 408, 413, n.3 (Minn. 1997) (justifiable reliance an element of negligent misrepresentation).

Thus, to prove justifiable reliance in this case, Superior must demonstrate that the language of the CBA was ambiguous. Such a determination results in an interpretation of the CBA. The claim is thus preempted by Section 301. See, Smith v. Colgate-Palmolive Co., 943 F.2d 764, 771 (7th Cir. 1991) (state fraud claim preempted by § 301, as resolution of claim required interpretation of labor agreement).

Superior's reliance on Textron Lycoming Reciprocating Engine Division v. United Automobile, 523 U.S. 653, 657-58 (1998) in opposition to § 301 preemption is misplaced. In Textron, the Union sued the employer under § 301, alleging the employer fraudulently induced the Union to sign the collective bargaining agreement, which, *inter alia*, prohibited the Union from striking for any reason, and required the employer to give the Union seven days notice before

6

entering into an agreement to subcontract out work that would otherwise be given to a union worker.  The Union alleged that during negotiations, it had repeatedly asked the employer if it had any plans to subcontract out work and were told no such plans existed, when in fact such plans did exist.  Textron 523 U.S. 653, at 655.

Unlike the circumstances that exist in this case, the claim of fraudulent inducement alleged in Textron did not involve an oral representation that contradicted contract language, or that a party to the contract was in breach.  Because no provision of the collective bargaining agreement was at issue in Textron, the Court found that the claim did not fall within Section 301.  Here, however, Superior is alleged to have breached the CBA by the Plaintiff Trustees of the Twin City Bricklayers Fringe Benefit Fund, and the claims of fraudulent inducement and misrepresentation rest on whether the contract language was clear or ambiguous.  Accordingly, Textron has no application in this case.[1]

Superior has also asserted claims of contribution, indemnity and rescission.

---

[1] The other cases cited by Superior in support of its argument that § 301 preemption does not apply are similarly unavailing, as they do not hold that claims which require interpretation of a collective bargaining agreement are not preempted.  See eg., J.W. Peters, Inc. v. Bridge, Structural and Reinforcing Iron Workers, 398 F.3d 967, 972 (7th Cir. 2005)(noting that in Textron, the Court specifically acknowledged that a party who is accused of breaching a collective bargaining agreement may ask the court to declare the agreement invalid under § 301);  Bauer v. RBX Industries, Inc., 368 F.3d 569, 579 (6th Cir. 2004)(where plaintiff failed to demonstrate existence of a contract, which could then be breached, district court had no jurisdiction over hybrid claim pursuant to § 301).

These claims are dependent on Superior's allegations of fraud and misrepresentation. See, Third-Party Complaint ¶¶ 36, 44 and 48. Accordingly, these claims are preempted as well.

Finally, Defendant Paschke argues that § 301 preemption does not apply to his individual claims against the Union, as § 301 applies to suits for violation of contracts between an employer and a labor organization, and that Paschke is not an employer. The LMRA defines employer as "any person acting as an agent of an employer, directly or indirectly. . . " 29 U.S.C. § 152(2). Paschke is the sole shareholder and president of Superior. Third-Party Complaint ¶ 4. He also executed the relevant CBA's on Superior's behalf. Based on these undisputed facts, Paschke was a person acting as agent of Superior, and is thus an employer pursuant to § 301. His individual state law claims are thus preempted as well. [2]

IT IS HEREBY ORDERED that the Union's Motion to Dismiss [Doc. No. 25] IS GRANTED. The Third-Party Complaint is dismissed in its entirety.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Date: June 23, 2005

                s/ Michael J. Davis
                Michael J. Davis
                United States District Court

---

[2] Because the Court's finding that the state law claims in the Third-Party Complaint are preempted by § 301, the Court need not address the Union's alternative arguments in support of its motion to dismiss.